IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUAN TRANSPORT CORPORATION, | ) |
| | ) |
| Plaintiff, | ) 16 C 11077 |
| | ) |
| v. | ) Judge John Z. Lee |
| | ) |
| SENTRY INSURANCE A MUTUAL COMPANY, | ) |
| and CENTRAL STEEL AND WIRE COMPANY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Ruan Transport Corporation ("Ruan") has filed a complaint against Defendants Sentry Insurance a Mutual Company ("Sentry") and Central Steel and Wire Company ("Central Steel"). Ruan seeks a declaratory judgment that two contracts between Ruan and Central Steel are void and unenforceable under 625 Ill. Comp. Stat. 5/18-c4105(a)—an anti-indemnity statute in the Illinois Vehicle Code—and that an agreement between the parties to settle related litigation violated Illinois insurance law. In return, Defendants have filed a counterclaim for breach of contract and seek a declaratory judgment that the contracts are enforceable under § 18-c4105(a). The parties have cross-moved for summary judgment. For the reasons stated herein, Defendants' motion [46] and Ruan's motion [41] are granted in part and denied in part.

## Factual Background[1]

The facts in this case are largely undisputed. In 1999, Ruan, a transportation company, entered into an agreement to provide contract carriage services (the "Transportation Agreement") to Central Steel, a metal fabricator and distributor. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 2–3, 8, ECF No. 49. The agreement contained an indemnification provision, in which Ruan agreed to "defend, indemnify and hold harmless" Central Steel for any loss arising from Ruan's performance under the agreement, regardless of Central Steel's own responsibility for the loss. *Id.* ¶ 9. The agreement also required Ruan to procure and maintain at least $5 million worth of primary liability insurance, naming Central Steel as an additional insured. *Id.* ¶¶ 10, 12.

From May 2012 to May 2013, Ruan did not maintain the required $5 million worth of primary liability insurance, instead procuring only $1 million in primary liability insurance from National Interstate Insurance Company ("National"), with Central Steel as an additional insured. *Id.* ¶¶ 14, 16. Ruan then procured $4 million in excess coverage from Chubb Insurance. *Id.* ¶¶ 15, 17, 46. During this period,

---

[1] The following facts are undisputed or deemed admitted. The Court notes that Ruan did not submit a separate statement of material facts as required by LR 56.1(a)(3), instead incorporating its factual statements in numbered paragraphs in its motion. ECF 41. No harm/no foul, however, given that Defendants construed these numbered paragraphs as a LR 56.1(a)(3) statement and responded thereto. ECF 50. However, Ruan did not file a response to Defendants' own LR 56.1(a)(3) statement as required by LR 56.1(b)(3). Accordingly, to the extent that Ruan wished to dispute the facts contained in Defendants' statement of material facts, Ruan waived its right to do so. *See* LR 56.1(b)(3) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Central Steel was also covered by a commercial general liability insurance policy through Sentry. *Id.* ¶¶ 5, 48.

In June 2012, a Ruan employee died after falling from a vehicle on Central Steel's premises. *Id.* ¶ 19. The employee's widow and estate filed a wrongful death and personal injury lawsuit in July 2012 (the "Underlying Litigation"), naming Central Steel as a defendant. *Id.* ¶¶ 19–20; *see also* Countercl., Ex. National Letter of 1/22/2013 at 1, ECF No. 18-6. In August 2012, Central Steel tendered the defense of the Underlying Litigation to Ruan, pursuant to the Transportation Agreement. Defs.' LR 56.1(a)(3) Stmt. ¶ 21; *see also* Countercl., Ex. National Letter of 12/13/2012 at 1, ECF No. 18-4. National, Ruan's primary insurer, agreed to defend Central Steel as an additional insured, subject to a reservation of rights based on a provision in its policy permitting it to deny coverage for losses attributable solely to the negligence of the additional insured. Defs.' LR 56.1(a)(3) Stmt. ¶ 22.

Central Steel interpreted the provision as creating a disincentive for National to explore Ruan's potential liability in the Underlying Litigation. That disincentive, according to Central Steel, represented a conflict of interest, which entitled Central Steel to select independent counsel at National's expense. *Id.* ¶ 24. Ruan and National disagreed with Central Steel's position. *Id.* ¶ 25. In February 2013, National, Ruan, and Central Steel held a meeting to resolve the dispute over the lawsuit's defense. *Id.* ¶ 27.

In April 2013, as a result of negotiations that occurred at the February meeting, Central Steel and Ruan entered into an agreement (the "Settlement

3

Agreement") to resolve the dispute[2] as well as to prescribe the means by which any settlement or judgment in the Underlying Litigation would be satisfied. *Id.* ¶ 31. In the Settlement Agreement, Central Steel agreed to waive its claimed right to control the defense of the Underlying Litigation and ceded control to Ruan, in return for which Ruan agreed to indemnify Central Steel for any settlement or judgment in that litigation. *Id.* ¶ 33. Ruan further agreed to waive any right of contribution it might have against Central Steel or Central Steel's insurers in connection with any payments Ruan made pursuant to the agreement. *Id.*

The Settlement Agreement included terms acknowledging that the agreement was neither "collateral to" nor "affecting a motor carrier transportation contract between Central Steel and Ruan," nor was it "void as against public policy" under Illinois law. *Id.* ¶ 35. The agreement also contained a merger clause, which stated that the agreement "supersedes any and all oral or written agreements or understandings pertaining to" the matters covered by it. *Id.* Finally, the Settlement Agreement provided that, "[i]n the event of any legal action between or among the Parties arising out of or in relation to this Agreement, or to enforce this Agreement, the prevailing party in such legal action shall be entitled to recover all of its costs and expenses, including reasonable attorneys' fees." *Id.* ¶ 37.

---

[2] The agreement included the following language: "The Parties desire to fully and finally settle and compromise all disputes between them regarding the defense of the [Underlying] Litigation and the means by which any settlement or judgment in that litigation will be satisfied." Compl., Ex. Settlement Agreement, Recitals § 9, ECF No. 1-2.

4

Over more than three years, Ruan exercised its right under the Settlement Agreement to select counsel and control the defense of the Underlying Litigation. *Id.* ¶¶ 38–39. But in June 2016, shortly before a scheduled mediation in the Underlying Litigation, Ruan informed Central Steel that it considered the Settlement Agreement void and unenforceable under Illinois law. *Id.* ¶¶ 41, 45. In response, Central Steel notified Ruan that it was in breach of the Transportation Agreement for failure to procure adequate primary insurance. *Id.* ¶ 44. Finally, right before the mediation, Ruan advised Defendants of its position that, under Illinois insurance law, National was obligated to pay its limits first, followed by Sentry's payment of its primary limits, followed by payments, if any, by Chubb, Ruan's excess carrier. Def.'s LR 56.1(b)(3) Stmt. ¶ 14, ECF No. 50.

The Underlying Litigation was settled at mediation in August 2016. Defs.' LR 56.1(a)(3) Stmt. ¶ 46. The parties and their insurers agreed to fund the settlement as follows: "(a) [National] would pay its limits; (b) [ ] Ruan and Sentry/[Central Steel] . . . each would pay one-half of the next primary layer subject to a full reservation of rights; and (c) Chubb . . . would contribute after the primary layers were exhausted."[3] *Id.*; Compl. ¶ 24, ECF No. 1. The reservation of rights by Ruan and Sentry/Central

---

[3]    The language quoted comes from the description of the agreement to fund the litigation settlement as it appears in Ruan's complaint, which is reproduced verbatim in Defendants' Statement of Fact, only citing to Ruan's complaint for support. *See* Compl. ¶ 24; Defs.' LR 56.1(a)(3) Stmt. ¶ 46. Because Defendants' agreed with Ruan's description in their answers to the complaint, the Court considers the details of the agreement to contribute to the settlement fund to be judicial admissions. *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("[J]udicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.").

Steel included the right to pursue the other for reimbursement of settlement payments.[4] Defs.' LR 56.1(a)(3) Stmt. ¶ 46; Pl.'s Answer Countercl. ¶ 39, ECF No. 22.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmovant "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

## Analysis

### I. Declaratory Judgment Claims

Ruan seeks declaratory judgment that Defendants are required to reimburse Ruan for payments made to the settlement fund in the Underlying Litigation because (1) the Settlement Agreement (Count I) and the Transportation Agreement (Count

---

[4] The Court further considers the fact of the parties' reservation of rights to be a judicial admission. *See Keller*, 58 F.3d at 1198 n.8.

6

II) are both contrary to Illinois public policy and void under 625 Ill. Comp. Stat. 5/18-c4105(a); and (2) and the agreement to fund the settlement violated Illinois insurance law (Count III). Compl. ¶¶ 34, 43, 55. Defendants' counterclaim for declaratory judgment asserts that the Settlement Agreement is enforceable under Illinois law and that Ruan is therefore bound to indemnify Defendants for contributions they made to the settlement fund in the Underlying Litigation (Count III). Countercl. ¶¶ 61, 64, ECF No. 18.

Ruan moves for summary judgment as to all three of its counts. Defendants move for summary judgment on both Plaintiffs' Count I and Defendants' declaratory judgment counterclaim.

Section 18-c4105(a) was added to the Illinois Vehicle Code in 2009 "to rectify what many states . . . have perceived to be an inequitable 'shift of risk' in the shipper and carrier relationship in motor carrier transportation contracts when a carrier is contractually required to indemnify a shipper for the shipper's own negligence." *Burke v. John Maneely Co.*, No. 14 C 285, 2016 WL 454330, at *2 (N.D. Ill. Feb. 5, 2016) (quoting *Ruiz v. Carmeuse Lime, Inc.*, No. 10 C 21, 2011 WL 3439221, at *5 (N.D. Ind. Aug. 4, 2011)). The statute voids any provision "contained in, collateral to, or affecting a motor carrier transportation contract" that indemnifies the promisee from liability for loss resulting from the promisee's own negligence, action, or inaction. § 18-c4105(a). As defined by the statute, the term "motor carrier transportation contract" includes contracts covering "[t]he transportation of property for compensation or hire by the motor carrier." § 18-c4105(b)(1)(A).

7

### A. Enforceability of the Transportation Agreement

Section 18-c4105(a) clearly applies to the Transportation Agreement, a contract carriage agreement between a shipper and a motor carrier. *See id.* The indemnification provision in the Transportation Agreement is likewise squarely in line with the kind of provision the statute deems void, as it states that Ruan "shall defend, indemnify and hold harmless Central Steel" for any loss arising from Ruan's performance under the agreement, regardless of whether such loss was "caused in part" by the negligence, action, or inaction of Central Steel, the promisee. Pl.'s Mot. Summ. J., Ex. Transportation Agreement § 15(a), ECF No. 41-1. The statute only voids the indemnification provision, however, and not the entire contract. *See Burke*, 2016 WL 454330, at *6 (voiding only the indemnification provision of a contract, not the contract itself, under § 18-c4105(a)). The remainder of the contract is therefore enforceable.

### B. Enforceability of the Settlement Agreement

Because the indemnity provision in the Transportation Agreement is void, whether Ruan is bound to indemnify Central Steel in the Underlying Litigation turns on the enforceability of the indemnity provision in the Settlement Agreement. Ruan contends that the indemnity provision in the Settlement Agreement is void under § 18-c4105(a) either because the agreement is an "addendum" to the Transportation Agreement and thus is itself a "motor carrier transportation contract," Pl.'s Mot. Summ. J. at 7, or because the Settlement Agreement was "collateral to" the Transportation Agreement, Pl.'s Resp. at 1, ECF No. 52. It further contends that

enforcing the indemnity provision in the Settlement Agreement would violate public policy as expressed by the Illinois legislature through § 18-c4105(a).

### i. Addendum to the Transportation Agreement

Ruan argues that the Settlement Agreement is an addendum to the Transportation Agreement and therefore the indemnity provision is contained in a "motor carrier transportation contract," rendering § 18-c4105(a) applicable. As Ruan sees it, the Settlement Agreement became an addendum to the Transportation Agreement by way of the Settlement Agreement's merger clause, which provided that the agreement "supersede[d] any and all oral or written agreements or understandings pertaining to" the matters covered by it. Pl.'s Mot. Summ. J. at 7–8. According to Ruan, this language caused the Settlement Agreement to supersede the Transportation Agreement, because both agreements contain provisions pertaining to Ruan's defense and indemnification of Central Steel. *Id.*; *see also* Pl.'s Reply ¶ 6.

The Settlement Agreement indeed superseded the indemnification obligations from the Transportation Agreement as to the Underlying Litigation. *See* Settlement Agreement § 7 ("This Agreement constitutes the sole agreement between the Parties concerning the settlement of the matters covered by this Agreement and supersedes any and all oral or written agreements or understandings pertaining to such matters."); *id.*, Recitals § 9 ("The Parties desire to fully and finally settle and compromise all disputes between them regarding the defense of the [Underlying] Litigation and the means by which any settlement or judgment in that litigation will be satisfied.").

9

But it is unclear how the Settlement Agreement could, according to Ruan, become an "addendum" to the Transportation Agreement by way of superseding some portion of it. Ruan does not explain, instead treating the conclusion as self-explanatory. *See* Pl.'s Reply ¶¶ 6, 7; Pl.'s Mot. Summ. J. at 7–8.

In any event, Ruan presents no coherent argument for how the Settlement Agreement, which resolves a particular dispute between and among Ruan, Central Steel, and their respective insurers, that arose under the terms of the Transportation Agreement as a result of the Underlying Litigation, became "part of" Ruan and Central Steel's motor carrier transportation contract. This is especially so given that the parties expressly agreed that the Settlement Agreement was not an "agreement contained in, collateral to, or affecting a motor carrier transportation contract" (presumably referring to the Transportation Agreement) between Ruan and Central Steel. *See* Settlement Agreement § 5*; Mid-Century Ins. Co. v. Founders Ins. Co.*, 936 N.E.2d 780, 784 (Ill. App. Ct. 2010) ("It is the intent of the parties to a contract that determines its scope."). The Court therefore finds that the Settlement Agreement is not an "addendum" to the Transportation Agreement.

### ii. Collateral to the Transportation Agreement

Undeterred, Ruan also contends that § 18-c4105(a) applies to the Settlement Agreement, because the agreement was "collateral" to the Transportation Agreement. Pl.'s Resp. ¶¶ 3–4. Ruan argues this is the case because the Settlement Agreement "arose solely from" and "is derivative of" the Transportation Agreement. *Id.* Ruan does not provide a source for its understanding of "collateral" as meaning "derivative."

10

The statute does not define the term "collateral," nor have Illinois courts expressly construed the term. *Black's Law Dictionary* defines the term "collateral contract" as "[a] side agreement that relates to a contract that, if unintegrated, can be supplemented by evidence of the side agreement; an agreement made before or at the same time as, but separately from, another contract." *Collateral Contract, Black's Law Dictionary* (10th ed. 2014).

Here, putting aside the fact that the parties themselves acknowledged that the Settlement Agreement was not "collateral to" the Transportation Agreement, *see* Defs.' LR 56.1(a)(3) Stmt. ¶ 35, the Settlement Agreement cannot be collateral to the Transportation Agreement because the Transportation Agreement was a complete, integrated contract. *See Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 18–19 (Ill. App. Ct. 2007) (holding that "[a] contract is integrated when the parties intend it to be a final and complete expression of the agreement between them" and explaining that the presence of a merger clause expressing the parties' intention that the present agreement is final and complete "is strong evidence" of integration). The Transportation Agreement was integrated because it was a detailed seventeen-page document entered into by relatively sophisticated parties, contained no obvious omitted terms so as to indicate incompletion, and included a merger clause indicating the parties' intent that the agreement "completely states the rights and obligations of the parties hereto with respect to the subject matter hereof." *See* Pl.'s Mot. Summ. J., Ex. Transportation Agreement § 18; *see also Midwest Builder*, 891 N.E.2d at 18–19. Moreover, the Settlement Agreement was not made

11

contemporaneously with the Transportation Agreement, but rather fourteen years later. *See Goldwater v. Greenberg*, 95 N.E.3d 1237, 1242 (Whether an agreement is collateral "depends upon when the agreement was made and the intent of the parties at that time."). As such, the Court finds that the Settlement Agreement was not collateral to the Transportation Agreement.

### iii. Contrary to Public Policy

Ruan's final argument is that enforcing the indemnity provision in the Settlement Agreement would violate public policy as expressed by the Illinois legislature through § 18-c4105(a). Where a statute advances a public policy interest, parties are not free to privately contract around the statute. "[T]he public policy of the state is not to be determined by 'the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public.'" *Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 93 (Ill. 2006) (quoting *Groome v. Freyn Eng'g Co.*, 28 N.E.2d 274, 280 (Ill. 1940)). Thus, where "the Illinois General Assembly has made clear that . . . an indemnification provision [contained in a carrier contract] is 'void and unenforceable,'" the Court cannot enforce the provision, even if the parties have mutually agreed to disregard the statute. *Burke*, 2016 WL 454330, at *3.

But even Ruan does not go so far as to claim that the Settlement Agreement is itself a motor transportation carrier contract. Nor, for the reasons discussed above, can it be considered an addendum to the Transportation Agreement or an agreement collateral to it. Ruan's only remaining argument—thrown out in one sentence in its reply brief—is that the Settlement Agreement should be void because it "affects" the obligations set forth in the Transportation Agreement. Pl.'s Reply at ¶ 3. It is well-

12

established that such undeveloped arguments, and arguments made for the first time on reply, are waived. See *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))); *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived.").

But even if Plaintiffs had not waived the argument, it would still fail for two reasons. First, as Defendants point out, § 18-c4105(a) was intended only to address bargaining power imbalance between shippers and carriers in the negotiation of motor transportation carrier contracts. *See Burke v. John Maneely Co.*, No. 14-CV-285, 2016 WL 454330, at *2 (N.D. Ill. Feb. 5, 2016) (explaining that the purpose of statutes such as § 18-c4105(a) "is to rectify what many states have perceived to be an inequitable shift of risk in the shipper and carrier relationship in motor carrier transportation contracts when a carrier is contractually required to indemnify a shipper for the shipper's own negligence" (citation and internal quotation marks omitted)). Put simply, the Settlement Agreement is not a motor transportation carrier contract. Rather, it is an agreement intended to resolve the specific claims asserted between and among Ruan, Central Steel, and their respective insurers, that arose out of the Underlying Litigation.

Second, Ruan's overly broad construction of § 18-c4105(a) would lead to nonsensical results. Consider, for example, a scenario where Shipper A enters into a

motor transportation carrier contract with Carrier B that complies with §18-c4105(a). Two years later, an employee of Carrier B is injured while carrying out her duties on Shipper A's property; she sues both Shipper A and Carrier B for negligence. Shipper A and Carrier B file cross-claims against one another. During the course of the lawsuit, Shipper A and Carrier B enter into an agreement to settle their contribution claims against one another. Under Ruan's approach, this agreement would be barred by §18-c4105(a). And, indeed, a dispute of this type between a shipper and carrier could never be settled under any circumstances, but would always have to proceed to trial. Given the well-established public policy favoring settlements, *Johnson v. Hermanson*, 582 N.E.2d 265, 267 (Ill. App. Ct. 1991), the Illinois General Assembly could not have intended such a far-reaching result. *See Ill. State Treasurer v. Ill. Workers' Comp. Comm'n*, 30 N.E.3d 288, 298 (Ill. 2015) (stating that courts "have an obligation to construe statutes in a way that will avoid absurd, unreasonable, or unjust results").

In sum, the Settlement Agreement is neither void or unenforceable under § 18-c4105(a) nor under Illinois public policy. Accordingly, Defendants are entitled to be reimbursed for contributions they made to the settlement fund, as well as costs and expenses associated with this action, including reasonable attorneys' fees. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 33, 37.

### C. Enforceability of the Agreement to Fund the Settlement

In Count III, Ruan seeks declaratory judgment that the agreement to fund the settlement reached in the Underlying Litigation violated Illinois insurance law, and thus that Sentry must reimburse Ruan for its contributions to the settlement fund.

Compl. ¶ 55. Ruan contends that because the settlement required Ruan's excess insurer to contribute before Central Steel's primary insurer had exhausted its limits, the settlement violated Illinois law, which requires that primary insurance coverage must be exhausted before any excess coverage becomes available. Pl.'s Mot. Summ. J. at 10–11; *see also* Pl.'s Resp. ¶¶ 31–33.

The Court declines to reach Ruan's arguments as to the validity of the agreement to fund the settlement, because Ruan must reimburse Defendants pursuant to the Settlement Agreement regardless of the validity of the agreement to fund the settlement. Pursuant to the Settlement Agreement, Ruan agreed to indemnify Central Steel for any settlement of judgment in the Underlying Litigation, regardless of whether National or any other insurer agreed to pay a portion or all of the settlement or judgment. Defs.' LR 56.1(a)(3) Stmt. ¶ 33. In addition, Ruan waived any right of contribution it might have against Central Steel or its insurers related to payments in connection with the litigation. *Id.* Defendants contributed some unspecified fund toward the settlement fund, but reserved their rights to pursue Ruan for reimbursement. *See id.* ¶ 46; Pl.'s Ans. Countercl. ¶ 39. Therefore, whether the agreement to fund the settlement is valid or not, Defendants are entitled to reimbursement from Ruan.

For the foregoing reasons, the Court denies Ruan's motion for summary judgment as to Counts I and III. It grants in part Ruan's motion for summary judgment as to Count II and declares that the Transportation Agreement's indemnity provision is void and unenforceable under § 18-c4105(a). The Court also grants

15

Defendants' motion for summary judgment as to Count I and Counterclaim Count III.

## II. Claim for Breach of Contract

In addition, Defendants claim that Ruan breached the Transportation Agreement (Count I) by failing to procure adequate insurance, Countercl ¶ 47, and breached the Settlement Agreement (Count II) by failing to indemnify Central Steel for its liabilities in the settlement of the Underlying Litigation, *id.* ¶ 55.

Defendants now move for summary judgment on these counts. Defs.' Cross Mot. Summ. J. at 1. They argue that Central Steel's contributions to the settlement fund—as well as Sentry's contributions on Central Steel's behalf, as its insurer—are costs that should have been borne by Ruan pursuant to its indemnification obligations under the Settlement Agreement. Defs.' Mem. Supp. at 17. They further contend that, had Ruan procured adequate primary insurance as required by the Transportation Agreement, its primary insurer would have covered the entirety of the settlement fund in the Underlying Litigation, obviating Defendants' need to contribute. *Id.* at 20. Thus, according to Defendants, their contributions to the fund represent their damages from Ruan's breach of the Transportation Agreement. *Id.* at 10.

As discussed earlier, the Settlement Agreement was intended to resolve all disputes between the parties related to the defense of the Underlying Litigation and the means by which any settlement or judgment in that litigation would be satisfied. *See* Settlement Agreement § 7 ("This Agreement constitutes the sole agreement

16

between the Parties concerning the settlement of the matters covered by this Agreement and supersedes any and all oral or written agreements or understandings pertaining to such matters.") By signing the Settlement Agreement, Defendants lost their ability to pursue Ruan for obligations, related to the Underlying Litigation, that arose from the Transportation Agreement. Any such obligations by Ruan were replaced by obligations under the Settlement Agreement. The Court therefore denies Defendants' motion for summary judgment as to Counterclaim Count I.

As for Defendants' claim for breach of contract as related to the Settlement Agreement, the damages Defendants seek for that claim are the same damages that flow from the declaratory judgment Defendants assert in Counterclaim Count III. As the Court has already granted summary judgment to Defendants as to Counterclaim Count III, Defendants have already been made whole and Counterclaim Count II is duplicative. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 963 (Ill. 2002) ("It is well established that for one injury there should only be one recovery irrespective of the availability of multiple remedies and actions."). The Court therefore denies Defendants' motion for summary judgment as to Counterclaim Counts II as moot.

## Conclusion

For the reasons provided herein, the Court grants in part and denies in part Ruan's motion for summary judgment [41] and Defendants' cross-motion for summary judgment [46]. The Court denies Ruan's motion for summary judgment as to Counts I and III, and grants in part and denies in part Ruan's motion for summary

judgment as to Count II. The Court further grants Defendants' motion for summary judgment as to Count I and Counterclaim Count III and denies Defendant's motion for summary judgment as to Counterclaim Counts I and II. In accordance with those rulings, the Court declares that (1) the Transportation Agreement's indemnity provision is void and unenforceable under § 18-c4105(a), but the remainder of the Transportation Agreement is neither void nor unenforceable under the statute; (2) the Settlement Agreement is neither void nor unenforceable under either § 18-c4105(a) or Illinois public policy; and (3) pursuant to the Settlement Agreement, Ruan must indemnify Defendants for contributions they made to the settlement fund in the Underlying Litigation, as well as costs and expenses associated with this action, including reasonable attorneys' fees. No claims remain. Civil case terminated.

**IT IS SO ORDERED.**                    ENTERED    8/15/18

                                                                      _____
                                                                      **John Z. Lee**
                                                                      **United States District Judge**